**DALLAS MERCHANT'S AND CON-
CESSIONAIRE'S ASSOCIA-
TION et al., Petitioners,**

v.

**CITY OF DALLAS, Respondent.**

No. D–2159.

Supreme Court of Texas.

April 7, 1993.

Rehearing Overruled June 3, 1993.

Richard M. Lannen, Diane Snelson, Eric V. Moyé, Eric R. Cromartie, David C. Godbey, Andrew L. Siegel, Dallas, for petitioners.

Dan Morales, Austin, John Rogers, Dallas, W. Reed Lockhoof, Austin, Analeslie U. Muncy, Fort Worth, Angela Washing-

490

ton, Sam A. Lindsay, Dallas, for respondent.

## OPINION

HIGHTOWER, Justice.

In this cause, we consider whether an ordinance of a home-rule city prohibiting the sale of alcoholic beverages within 300 feet of a residential area is preempted by the Texas Alcoholic Beverage Code (TABC). In 1990, the Dallas Merchants and Concessionaires Association, the Texas Package Stores Association, and other individuals (hereinafter "Merchants") filed suit against the City of Dallas ("City") for declaratory and injunctive relief. The trial court held that the ordinance was preempted by the TABC. The court of appeals reversed. 823 S.W.2d 347. We hold that an ordinance of a home-rule city prohibiting the sale of alcoholic beverages within 300 feet of a residential area is preempted by the TABC. Consequently, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

On September 30, 1987, the Dallas City Council ("Council") passed Ordinance No. 19694 ("Ordinance"), which created new zoning categories for South Dallas. The Ordinance imposed a D-1 overlay on certain areas of South Dallas and exempted certain areas that are outside of and do not effect the residential areas of South Dallas. In this D-1 overlay area, no business is allowed to sell or serve alcoholic beverages within 300 feet of residentially zoned properties not located on a freeway service road or other specified road. However, a business in a D-1 overlay area may sell or serve alcoholic beverages if the Council grants a specific use permit (SUP). On October 12, 1988, the Council approved Resolution 883306, which established the guidelines for evaluating SUP applications for selling or serving alcoholic beverages in areas of South Dallas affected by the D-1 overlay. In June 1990, the Merchants filed suit against the City.

Following a bench trial, the trial court rendered judgment which, among other things, granted the declaratory and injunctive relief requested by the Merchants. The trial court concluded that the D-1 overlay provisions of the Ordinance conflicted with the TABC and was void to that extent under article XI, section 5 of the Texas Constitution.[1] The trial court also permanently enjoined the City from enforcing the D-1 overlay provisions of the Ordinance. The court of appeals reversed and rendered judgment.

### I.

The Merchants argue that the Ordinance is preempted by the TABC. We agree.

### PREEMPTION OF HOME-RULE CITIES

■ To determine whether the Ordinance is preempted by the Texas Alcoholic Beverage Code, we must decide whether the Legislature, by enacting and amending the TABC, preempted ordinances of home-rule cities that prohibit the sale of alcoholic beverages under these circumstances. Home-rule cities have broad discretionary powers, provided that no ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5. Home-rule cities possess the full power of self government and look to the Legislature not

---

1. In the findings of fact, the trial court stated in part:

14. None of the SUPs filed by any Establishment within the areas zoned D-1 by Ordinance 19694 had been granted.
15. The criteria adopted by the Dallas City Council make it virtually impossible for any existing Establishment to qualify for a SUP.
16. Ordinance 19694 conflicts with and is preempted by the Texas Alcoholic Beverages Code ("TABC"), in that: the Ordinance and the SUP standards impose location restric-

tions that are inconsistent with the TABC; the Ordinance and the SUP standards attempt to regulate the sale of alcoholic beverages, other than beer, by ordinance; the Ordinance and the SUP standards discriminate against establishments holding permits issued under the TABC, and; the Ordinance and the SUP standards impermissibly attempt to disenfranchise the choice of the voters of the areas affected by Ordinance 19694 in violation of the Local Option provisions and procedures set forth in the TABC.

for grants of power, but only for limitations on their power. *MJR's Fare of Dallas v. City of Dallas,* 792 S.W.2d 569, 573 (Tex.App.—Dallas 1990, writ denied).

An ordinance of a home-rule city that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute. *See City of Brookside Village v. Comeau,* 633 S.W.2d 790, 796 (Tex.1982), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982). However, "the mere fact that the legislature has enacted a law addressing a subject does not mean the complete subject matter is completely preempted." *City of Richardson v. Responsible Dog Owners,* 794 S.W.2d 17, 19 (Tex.1990). "[A] general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." *City of Beaumont v. Fall,* 116 Tex. 314, 291 S.W. 202, 206 (1927). Thus, if the Legislature chooses to preempt a subject matter usually encompassed by the broad powers of a home-rule city, it must do so with unmistakable clarity. *See City of Sweetwater v. Geron,* 380 S.W.2d 550, 552 (Tex.1964).

### TEXAS ALCOHOLIC BEVERAGE CODE

In 1977, the Legislature codified the Texas Liquor Control Act into the TABC.[2] Prior to the codification, several courts of appeals held that various ordinances of home-rule cities prohibiting the sale of alcoholic beverages were not preempted by the Texas Liquor Control Act. *See, e.g., City of Clute v. Linscomb,* 446 S.W.2d 377 (Tex. Civ.App.—Houston [1st Dist.] 1969, no writ); *Louder v. Texas Control Board,* 214 S.W.2d 336 (Tex.Civ.App.—Beaumont 1948, writ ref'd n.r.e.); *Eckert v. Jacobs,* 142 S.W.2d 374 (Tex.Civ.App.—Austin 1940, no writ). Subsequent to the codification, the Eleventh Court of Appeals held that the TABC did not preempt ordinances prohibiting the sale of alcoholic beverages. *See Young, Wilkinson & Roberts v. City of*

*Abilene,* 704 S.W.2d 380, 383 (Tex.App.—Eastland 1985, writ ref'd n.r.e.) ("We hold that the Constitution and general statutes of this State do not deny the City [a home rule city] the right to regulate the area of the City in which liquor could be sold."); *Abilene Oil Distributors v. City of Abilene,* 712 S.W.2d 644 (Tex.App.—Eastland 1986, writ ref'd n.r.e.).

Subsequently, in 1987, the Legislature added section 109.57 to the TABC and further amended it in 1991 to read in part:

(a) Except as expressly authorized by this code, a regulation, charter, or ordinance promulgated by a governmental entity of this state may not impose stricter standards on premises or businesses required to have a license or permit under this code than are imposed on similar premises or businesses that are not required to have such a license or permit.

(b) It is the intent of the legislature that this code shall exclusively govern the regulation of alcoholic beverages in this state, and that except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code.

(c) Neither this section nor Section 1.06 of this code affects the validity or invalidity of a zoning regulation that was formally enacted before June 11, 1987 and that is otherwise valid, or any amendment to such a regulation enacted after June 11, 1987 if the amendment lessens the restrictions on the licensee or permittee or does not impose additional restrictions on the licensee or permittee. For purposes of this subsection, "zoning regulation" means any charter provision, rule regulation, or other enactment governing the location or use of buildings, other structures, and land.

TEX.ALCO.BEV.CODE ANN. § 109.57(a), (b) & (c) (Vernon Supp.1992). The Legislature's intent is clearly expressed in section 109.57(b) of the TABC—the regulation of alcoholic beverages is exclusively governed by the provisions of the TABC unless oth-

**2.** "[The TABC] is intended as a recodification only, and no substantive change in the law is intended by this Act." Acts 1977, 65th Leg., ch. 194, § 7.

erwise provided.[3] TEX.ALCO.BEV.CODE ANN. § 109.57(b) (Vernon Supp.1992). Section 109.57 clearly preempts an ordinance of a home-rule city that regulates where alcoholic beverages are sold under most circumstances.[4] Accordingly, we hold that, to the extent of any conflict, the TABC preempts the Ordinance.[5]

**3.** While the dissent contends that the legislature did not deny home rule cities the ability to regulate with unmistakable clarity under these circumstances, how much more clear must the legislature be than Section 109.57(b), which states: "It is the intent of the legislature that this code [TABC] shall exclusively govern the regulation of alcoholic beverages in this state...." TEX.ALCO.BEV.CODE ANN. § 109.57(b) (Vernon Supp.1992). In addition, Senator McFarland, who was a member of the Conference Committee on H.B. 1652 which enacted Section 109.57, indicated that Section 109.57 was intended to clarify that the TABC governed the location of licensees and permittees and that cities could only regulate the location of licensees and permittees in the instances provided by the TABC. Specifically, Senator McFarland stated,

> [I]t [Section 109.57] says except as authorized by this code [a governmental entity may not regulate the location of a business holding a license or a permit] and there's numerous provisions throughout the code which governmental entities have the authority by zoning or other ordinances, to limit the location of businesses or the type of businesses selling alcoholic beverage.

Debate of conference committee report on Tex. H.B. 1652 on the floor of the Senate, 70th Leg. (June 1, 1987) (colloquy between Senators McFarland and Washington).

**4.** Section 109.57(d) of the TABC states:

> (d) This section does not effect the authority of a governmental entity to regulate, in a manner as otherwise permitted by law, the location of:
>     (1) a massage parlor, nude modeling studio, or other sexually oriented business; or
>     (2) an establishment that derives 75 percent or more of the establishment's gross revenue from the on-premise sale of alcoholic beverages.

Because none of the parties assert that the Ordinance implicates this provision, we express no opinion concerning its applicability.

Since the following cases pre-date the enactment of section 109.57, they are not applicable when determining the preemptive effect of section 109.57. *See Abilene Oil Distributors v. City of Abilene,* 712 S.W.2d 644 (Tex.App.—Eastland 1986, writ ref'd n.r.e.); *Young, Wilkinson & Roberts v. City of Abilene,* 704 S.W.2d 380 (Tex. App.—Eastland 1985, writ ref'd n.r.e.); *T & R Assoc., Inc. v. City of Amarillo,* 688 S.W.2d 622, 625 (Tex.Civ.App.—Amarillo, writ ref'd n.r.e.); *Massengale v. City of Copperas Cove,* 520 S.W.2d

## II.

The City argues that if section 109.57 preempts an ordinance of a home-rule city regulating where alcoholic beverages are sold, sections 61.37, 109.31, 109.32, and 109.33 will be rendered meaningless.[6] We disagree.

824, 829 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.; *Derkard v. City of Port Lavaca,* 491 S.W.2d 748, 751 (Tex.Civ.App.—Corpus Christi 1973, no writ); *City of Clute v. Linscomb,* 446 S.W.2d 377 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ); *Discount Liquors No. 2, Inc. v. Texas Liquor Control Board,* 420 S.W.2d 422, 423, 425 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.); *Louder v. Texas Liquor Control Board,* 214 S.W.2d 336 (Tex.Civ.App.—Beaumont 1948, writ ref'd n.r.e.); *Eckert v. Jacobs,* 142 S.W.2d 374 (Tex.Civ.App.—Austin 1940, no writ).

**5.** The dissent argues that if this court holds that the TABC preempts an ordinance regulating where alcoholic beverages are sold, sellers of alcoholic beverages will not have to comply with any city ordinance. This argument is without merit. Section 109.57(a) provides that an ordinance may not impose stricter standards on alcohol related businesses than on non-alcohol related businesses. TEX.ALCO.BEV.CODE § 109.57(a) (Vernon Supp.1992). For example, under section 109.57(a), an ordinance requiring all businesses with the same kind of premises to have a fire extinguisher on their premises would not violate section 109.57(a). On the other hand, an ordinance requiring an alcohol related business to have two fire extinguishers and only required a non-alcohol related business with the same kind of premises to have one fire extinguisher would violate section 109.57(a).

**6.** Section 61.37 reads in pertinent part:

> (a) The County Clerk of the county in which an application for a license is made shall certify whether the location or address given in the application is in a wet area and whether the sale of alcoholic beverages for which the license is sought is prohibited by any valid order of the commissioners court.
> (b) The city secretary or clerk of the city in which an application for a license is made shall certify whether the location or address given in the application is in a wet area and whether the sale of alcoholic beverages for which the license is sought is prohibited by charter or ordinance.

TEX.ALCO.BEV.CODE ANN. § 61.37 (Vernon 1978). Section 109.31 reads:

> A city by charter may prohibit the sale of liquor in all or part of the residential sections of the city.

TEX.ALCO.BEV.CODE ANN. § 109.31 (Vernon 1978). Section 109.32 reads in pertinent part:

■ Section 109.57 expressly states that the TABC will exclusively govern the regulation of alcoholic beverages except as otherwise provided by the TABC.[7] TEX. ALCO.BEV.CODE ANN. § 109.57 (Vernon Supp.1992). Thus, the TABC allows ordinances of home-rule cities to prohibit the sale of alcoholic beverages only under limited circumstances. Pursuant to section 109.31, the sale of liquor may be prohibited within residential areas only by charter. TEX.ALCO.BEV.CODE ANN. § 109.31 (Vernon 1978). Under section 109.32, the sale of beer may be prohibited within residential areas by ordinance or charter. TEX.ALCO.BEV.CODE ANN. § 109.32 (Vernon 1978). These options are still available to the City. However, in this case, the Ordinance attempts to prohibit the sale of liquor and beer in non-residential areas. An ordinance may not prohibit the sale of beer in non-residential areas or the sale of liquor in residential or non-residential areas. *See* TEX.

ALCO.BEV.CODE ANN. §§ 109.31–32 (Vernon 1978).

■ Section 109.33 permits a county or city to prohibit the sale of alcoholic beverages by a dealer whose place of business is within 300 feet of a church, school, or public hospital. TEX.ALCO.BEV.CODE § 109.33(a) (Vernon Supp.1992). This option is still available to the City.[8] However, in this case, the Ordinance attempts to prohibit the sale of alcoholic beverages within 300 feet of a residential area—not within 300 feet of a church, school or public hospital.

■ Likewise, section 61.37 does not conflict with section 109.57. Section 61.37 states that a city secretary will merely certify whether an ordinance or charter prohibits the sale of alcoholic beverages in the area where alcoholic beverages will potentially be sold. TEX.ALCO.BEV.CODE ANN. § 61.37 (Vernon 1978). Under this section, certification is properly withheld only if an ordinance or charter prohibits the

---

(a) An incorporated city or town by charter or ordinance may:
   (1) prohibit the sale of beer in a residential area; and
   (2) regulate the sale of beer and prescribe hours when it may be sold, except a city or town may not permit the sale of beer when its sale is prohibited by this code.
TEX.ALCO.BEV.CODE ANN. § 109.32 (Vernon 1978). Section 109.33 reads in pertinent part:
   (a) The commissioners court of a county may enact regulations applicable in areas in the county outside an incorporated city or town, and the governing board of a city or town may enact regulations applicable in the city or town, prohibiting the sale of alcoholic beverages by a dealer whose place of business is within 300 feet of a church, public school, or public hospital.
TEX.ALCO.BEV.CODE ANN. § 109.33 (Vernon Supp.1992).

7. The dissent incorrectly asserts that Section 211.013 of the Local Government Code allows a home rule city to impose higher standards upon licensees and permittees. This conclusion is erroneous because of Section 109.57(a) of the TABC. Section 109.57(a) states than an ordinance promulgated by a governmental entity may not impose stricter standards on premises or businesses of a permittee than on similar premises and businesses not required to have a license or permit. The Ordinance imposes a stricter standard than allowed by the TABC, specifically, by regulating the location of busi-

nesses required to have licenses or permits under the TABC in circumstances not allowed by the TABC. Section 109.57(a) was by its terms enacted to exempt licensees and permittees from Section 211.013 of the Local Government Code.

The application of the doctrine of expressio unius est exclusio alterius further demonstrates the weakness of the dissent's conclusion that the City may regulate in this instance. That doctrine provides that the inclusion of a specific limitation excludes all others. *Royer v. Ritter,* 531 S.W.2d 448, 449 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). Sections 109.31–33 and 109.57(d) provide specific instances when a governmental entity, such as a home-rule city, may regulate the location of an alcohol related business. Thus, by expressly stating under what circumstances a governmental entity may regulate the location of an alcohol related business, it follows that there are no other instances when a governmental entity may regulate the location of an alcohol related business. The parties do not assert and we can not find any applicable grant of power to governmental entities to regulate the location of the sale of alcohol in this case.

8. In addition to regulating alcoholic beverages pursuant to sections 109.31–33, a city may make recommendations or protest the issuance of a permit by the Texas Alcoholic Beverage Commission. *See* TEX.ALCO.BEV.CODE ANN. § 11.41(a) (Vernon 1978).

sale of alcoholic beverages in a manner allowed by the TABC. *See* TEX. ALCO.BEV.CODE ANN. § 61.37 (Vernon 1978).

We recognize the benefits of ordinances which prohibit the sale of alcoholic beverages under these circumstances. However, the express language of section 109.57 compels this court to give effect to the Legislature's clear intent—the Ordinance is preempted to the extent it conflicts with the TABC. Therefore, we reverse the judgment of the court of appeals and affirm the judgment of the trial court. .

Dissenting opinion by ENOCH, J., joined by HECHT and CORNYN, JJ.

ENOCH, Justice, dissenting.

The city of Dallas faces a severe impediment to its redevelopment efforts for a portion of its community (South Dallas) that suffers disproportionately from poverty and crime. The Dallas Merchant's and Concessionaire's Association, the Texas Package Stores Association, Inc., and the five grocery and liquor store owners [1] who are petitioners in this Court all readily concede that alcohol-related businesses are overly concentrated in certain areas of the City of Dallas, that this concentration of such businesses causes severe problems in these areas, and that the City of Dallas adopted Ordinance No. 19694 to reduce this concentration and alleviate these problems. Today the Court adopts petitioners' argument that, regardless, the Legislature requires these matters to only be addressed by the Texas Alcoholic Beverage Commission in Austin, and not by the Dallas City Council. As much as we all are concerned about community restoration, I too would have joined the majority if the law required this result. But, the Court's decision is not mandated by the law. Therefore I dissent.

Ordinance No. 19694 prohibits the location of businesses selling or serving alcoholic beverages within 300 feet of residentially zoned property in certain areas of the city without a special use permit. The issue before us is whether this limited restriction on the location of alcohol-related businesses is preempted by TEX. ALCO.BEV.CODE § 109.57(a) and (b). Section 109.57(a) provides that an ordinance "may not impose *stricter standards on premises or businesses*" required to be licensed under the Code than on similar premises or businesses. (emphasis added). Section 109.57(b) states that "it is the intent of the legislature that this code shall exclusively govern the *regulation of alcoholic beverages* in this state, and that except as permitted by this code, a governmental entity of this state may not *discriminate* against a business holding a license or permit under this code." (Emphasis added.)

In my view, Ordinance No. 19694 does not "impose stricter standards on alcohol-related businesses or premises" within the meaning of section 109.57(a). Rather, it restricts the location of such businesses in some areas under some conditions. Nor does the ordinance attempt a "regulation of alcoholic beverages." The ordinance has nothing to do with beverages. Nor does the ordinance "discriminate" against alcohol-related businesses. It merely imposes a restriction on their location to alleviate community problems which petitioners concede such businesses cause.[2] This Ordinance is not, on its face, inconsistent or in conflict with state law. The ordinance is a reasonable supplement to state law to address a local problem. Both should remain in effect.

Assuming for the sake of argument that "location" may be considered a type of

1. The five business owners are Solomon Tadesse, d/b/a S & M Grocery, Nguyen Ha Lam, d/b/a M & D Liquor, Son Ngoc Nguyen, d/b/a Bingo Liquor, Youg Suk Bragdon, d/b/a K & B Grocery, and Thung Vam Tarn, d/b/a Lee's Grocery.

2. This is not to say that any ordinance restricting the location of alcohol-related businesses would be allowed by state law. Obviously, an

ordinance that prohibited the location of such businesses within a much larger distance from residential property might have the effect of eliminating those businesses altogether. Such an ordinance would conflict with state law. But an ordinance which is both written and applied to impose a limited restriction on location for a valid purpose does not conflict with section 109.57.

"standard" governing businesses, the law would still not mandate the outcome claimed by the Court. The Local Government Code states:

> If a zoning regulation adopted under this subchapter ... imposes higher standards than those required under another statute or local ordinance or regulation, *the regulation adopted under this subchapter controls.* If the other statute or local ordinance or regulation imposes higher standards, that statute, ordinance, or regulation controls.

Tex.Loc.Gov't Code Ann. § 211.013(a) (Vernon 1988) (emphasis added).

The Court's reading of section 109.57 of the Alcoholic Beverage Code creates a direct conflict between it and section 211.013(a). 852 S.W.2d 489, 493 n. 7. Where possible, courts are to construe language used in statutes so as to harmonize all relevant laws, not create conflict. *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984); *State v. Standard Oil Co.,* 107 S.W.2d 550, 559 (Tex.1937). Since it is possible, this court must construe the Local Government Code and the Alcoholic Beverage Code so that both provisions are given effect.

Section 109.57(a) prohibits a city from imposing stricter standards on *premises or businesses* licensed under the Alcoholic Beverage Code than are imposed on *similar premises or businesses* not required to have a license. Tex.Alco.Bev.Code Ann. § 109.57(a) (Vernon 1978) (emphasis added). The Alcoholic Beverage Code defines "premises" as "the grounds and all buildings, vehicles, and appurtenances pertaining to the grounds, including any adjacent premises if they are directly or indirectly under the control of the same person." Tex.Alco.Bev.Code Ann. § 11.49(a) (Vernon 1978). Section 11.49(a) refers only to the *physical* premises; it does *not* define "premises" to include the *location* of a licensed business. The Ordinance does not attempt to regulate the physical premises. Additionally, nothing in the Ordinance addresses how the business of selling alcohol is to be conducted. The Ordinance only regulates the location of the business.

The Court recognizes that a city ordinance will not be held repugnant to a general law of the state "if any other reasonable construction leaving both in effect can be reached," 852 S.W.2d at 491, (citing to *City of Richardson v. Responsible Dog Owners,* 794 S.W.2d 17 (Tex.1990)). Because a reasonable reading of these two statutes prevents the conflict the reasoning of the Court creates, there is no basis for restricting the City of Dallas' grant of authority to promulgate zoning regulations under sections 211.001–.013 of the Local Government Code.

The Court's holding seriously hampers the ability of municipalities to combat problems associated with the sale of alcohol. The City of Dallas did not seek to prohibit the sale of alcohol, merely to disperse the locations for its sale in order to achieve a reduction in the problems associated with the sale of alcohol such as increased crime, drinking on premises, litter, loitering, public intoxication, urinating in public, and harassment of children and elderly residents.[3] As petitioners admit, if cities cannot restrict the location of alcohol-related businesses, then only the Texas Alcoholic Beverage Commission can, in the course of granting licenses to businesses. Yet it would be virtually impossible for the Commission to obtain sufficient information in licensing proceedings to determine whether, how and where to impose such restrictions in the dozens of cities where they might be used. Petitioners admit that the Commission has not undertaken this responsibility to date, and it is farfetched to think the Commission would even try. The suggestion that the Legislature has decided that the Commission should address the local problems involved here instead of home-rule cities is most unlikely. Only those local planning, zoning and legislative bodies have, or can be expected to have, a pulse on the particular land use needs of their jurisdiction.

---

3. Several community leaders in the South Dallas/Fair Park area testified that these problems were exacerbated by the excessive concentration of alcohol related businesses in the area.

I agree with the Court that "if the Legislature chooses to preempt a subject matter encompassed by the broad powers of a home-rule city, it must do so with unmistakable clarity." 852 S.W.2d at 491. Whatever may be said of section 109.57, it cannot seriously be argued that the statute makes *unmistakably clear* that the Legislature has preempted the City of Dallas from exercising its broad zoning powers to improve living conditions within its borders. Preemption is even less likely when one considers the result.

I would affirm the judgment of the court of appeals, thus I respectfully dissent.

HECHT and CORNYN, JJ., join in this dissenting opinion.